UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTEL WARE-MARTIN o/b/o A.M.,

    Plaintiff,

v.                                                    Case No. 8:22-cv-2486-CPT

SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

**O R D E R**

The Plaintiff, proceeding pro se on behalf of her minor child, A.M., seeks judicial review of the Commissioner's decision denying A.M.'s claim for Supplemental Security Income (SSI).[1] For the reasons discussed below, the Commissioner's decision is affirmed.

---

[1] Since the inception of this litigation, the Court has afforded the Plaintiff an ample opportunity to obtain counsel, which she has apparently attempted to do based in part on a list of suitable lawyers provided by the Commissioner. *See* (Doc. 20). No attorney, however, has appeared on the Plaintiff's behalf. As there is case authority that the Plaintiff may nonetheless prosecute this action on behalf of A.M. without the benefit of a lawyer and as the Commissioner has not objected to her doing so, the Court will forge ahead and decide the matter. *See Harris v. Apfel*, 209 F.3d 413, 416–17 (5th Cir. 2000) ("We conclude that policy considerations . . . compel our holding that a non-attorney parent be permitted to sustain a pro se action on behalf of a minor child in SSI appeals.") (citing *Maldonado v. Apfel*, 55 F. Supp. 2d 296 (S.D.N.Y. 1999)); *T.R.B. by & through Green v. Berryhill*, 2019 WL 2202785, at *2 (S.D. Ga. May 21, 2019) ("Given courts' general approbation for non-attorney parents' pursuit of SSI benefits on behalf of their children, the [c]ourt sees no reason to prevent [a parent's] suit on behalf of [a minor].") (citing *Harris*, 209 F.3d at 414–17); *Kennedy o/b/o C.H.P.K. v. Berryhill*, 2019 WL

I.

In January 2011, the Plaintiff submitted an SSI application for A.M., which the Social Security Administration (SSA) granted after finding that A.M. was disabled as of her application date. (R. 71–79). In a subsequent decision issued in March 2016, however, the SSA determined as part of its continuing disability review process that A.M.'s conditions had improved such that she was no longer disabled as of that time frame. (R. 83). This assessment was upheld on reconsideration (R. 83) and by an ALJ following a hearing on the matter, at which the Plaintiff and A.M. both appeared (R. 80–102). The Appeals Council denied the Plaintiff's request for review. (R. 103–07).

In July 2020, the Plaintiff again applied for SSI on A.M.'s behalf. (R. 188–98). Upon review, the SSA concluded that A.M. was not disabled (R. 108–21) and declined to modify that determination on reconsideration (R. 122–28). At the Plaintiff's request, an ALJ conducted a hearing on the Plaintiff's SSI application in January 2022. (R. 31, 139). The Plaintiff appeared at that proceeding and testified for A.M., who did not attend. (R. 31–57).

In a decision issued in June 2022, the ALJ found, *inter alia*, that A.M. had the severe impairments of asthma, obesity, oppositional defiant disorder, and reactive airway disease, but did not have an impairment or combination of impairments that

---

623855, at *2 (N.D. Fla. Jan. 29, 2019) (finding *Harris* persuasive and concluding that a parent could proceed on behalf of a minor in an appeal from an administrative denial of SSI benefits).

2

met, or medically or functionally equaled, the severity of one of the listings.[2] (R. 16–30). In light of these findings, the ALJ concluded that A.M. was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. (R. 1–5). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

To be considered disabled, a claimant under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906.[3] In evaluating a disability claim brought on behalf of a minor, the ALJ must conduct a three-step inquiry. *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 918 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. § 416.924(a)).[4] First, the ALJ must ascertain whether the minor is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If not, the ALJ must discern whether the minor has a severe impairment or combination of impairments. *Id.* If so, the ALJ must then assess whether the minor's

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 416.924(d), 416.926(a).
[3] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

impairment or combination of impairments meets, or medically or functionally equals, a listed impairment, and also satisfies a duration requirement. *Id.*

To "meet" a listing, the minor must actually suffer from the limitations specified in the listing. *Shinn o/b/o Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). And to "medically equal" the limitations set forth in a listing, the minor's restrictions must be "at least equal in severity and duration to the criteria of [the] listed impairment." 20 C.F.R. § 416.926(a).

If the minor's impairment does not meet or medically equal a listing, the minor may still be found to be disabled if her impairment "functionally equals" a listing. *Id.* § 416.926a(a). In deciding whether the minor's condition crosses this threshold, the ALJ must evaluate the minor's functioning in six "broad areas" that are "intended to capture all of what a [minor] can or cannot do." *Id.* § 416.926a(b)(1). These six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.*

If the minor suffers from a "marked" limitation in at least two of these domains or an "extreme" limitation in one, the minor's condition will be deemed to be functionally equivalent to a listed impairment. *Id.* § 416.926a(d). A "marked" limitation is defined as a restriction that "interferes seriously with [the minor's] ability to independently initiate, sustain, or complete activities" and that is "more than moderate but less than extreme." *Id.* § 416.926a(e)(2)(i) (internal quotation marks omitted). And an "extreme limitation" is one that "interferes very seriously with [the

4

minor's] ability to independently initiate, sustain, or complete activities" but "does not necessarily mean a total lack or loss of [her] ability to function." *Id.* § 416.926a(e)(3)(i).

A minor who does not prevail on her disability claim at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

Construing the Plaintiff's legal memorandum liberally, as the Court must, *see Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), it

appears she raises two arguments: (1) the ALJ's determination that A.M. is not disabled is unsupported in light of her diagnosed conditions, some of which are life-threatening or could "lead[ ] to suicide;" and (2) the SSA committed a number of procedural errors relative to the claims process and/or Florida law. (Doc. 27). The Commissioner counters that the ALJ's decision is adequately substantiated by the evidence and comports with the applicable legal standards. (Doc. 29). After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenges lack merit.

A.

The Court commences its analysis with the Plaintiff's attack on the basis for the ALJ's disability finding. As alluded to above, the ALJ ascertained in her decision that A.M. did not have an impairment or combination of impairments which met or medically equaled the severity of a listed impairment, after considering "the relevant listings with [a] special emphasis on the listings concerning the respiratory system." (R. 21–22). The ALJ also discerned that A.M. did not have an impairment or combination of impairments that functionally equaled the severity of the listings based on the ALJ's analysis of the six functional domains. (R. 22–24). The ALJ determined in this respect that A.M. had no limitation in acquiring and using information, in moving about, and in manipulating objects; less than a marked limitation in attending and completing tasks, in interacting and relating with others, and in caring for herself; and a marked limitation in health and physical well-being. *Id*; 20 C.F.R. § 416.926a(a) (stating that to "functionally equal the listings," a claimant's impairment(s) must

"result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain").

Contrary to the Plaintiff's contention, it is evident from the ALJ's decision that she relied upon substantial evidence in assessing A.M.'s disability. After conducting an extensive review of the pertinent medical documentation and other information before her, the ALJ explained that while A.M. "had a history of severe persistent asthma," that condition was being adequately managed. (R. 23). To that end, the ALJ cited examinations that revealed no evidence of airflow obstruction, as well as spirometry results that showed predicted Forced Expiratory Volume$_1$ ($FEV_1$) values over one hundred percent.[5] (R. 23–24).

In addition, the ALJ observed that pulmonology treatment notes demonstrated that A.M. had "good control over her asthma with no exacerbations." (R. 24). And although the ALJ acknowledged that A.M. sought medical help following a brief allergic reaction to chlorine requiring epinephrine, the ALJ explained that the examination was "unremarkable in all respects" and established that A.M. had "clear, equal breath sounds." *Id.*

Along with the above evidence pertaining to A.M.'s respiratory function, the ALJ also considered A.M.'s mental health records. The ALJ noted, for example, that despite A.M. being diagnosed with oppositional defiant disorder due to reports of

---

[5] A spirometry is a pulmonary functions test that quantifies how well a claimant can move air into and out of her lungs. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E. This test is documented by "forced expiratory maneuvers" that measure exhaled volumes of air over time, which are known as the $FEV_1$. *Id.*

7

irritability and other symptoms following a November 2020 consultative examination, A.M. was fully oriented at that examination, exhibited intact attention, concentration, and judgment, and displayed no memory deficit. (R. 23).

The ALJ additionally reviewed materials showing that even though A.M. "sometimes" reported a depressed mood, she scored a minimal score on a depression scale. (R. 24). The ALJ remarked as well that while A.M. had sought treatment for depression and anxiety during the period at issue, she did not experience any significant symptom amplification. *Id.*

And lastly, the ALJ pointed out that two state agency medical consultants opined that A.M. had less than marked or no limitations in any functional domain. *Id.* Importantly, however, although the ALJ found that "record strongly support[ed] these functional limitations" and that "the relevant evidence established her asthma was well controlled," she nonetheless "allowed for marked limitations in health and well[-]being based on [A.M.'s] history of severe asthma." *Id.*

In an effort to undermine the evidentiary foundation buttressing the ALJ's findings, the Plaintiff now suggests that A.M. is disabled because she has been deemed to suffer from a list of maladies.[6] (Doc. 27 at 1–2). The Plaintiff also maintains that the ALJ overlooked certain unspecified "mental diagnoses" that are "now life[-]threatening." *Id.* at 5. In addition, as evidence of what the Plaintiff describes as

---

[6] According to the Plaintiff, these afflictions include obesity, chronic asthma, anxiety disorder, clinical depression, reactive airway disease, oppositional defiant disorder, attention deficit disorder, post-traumatic stress disorder, and "severe food and environmental allergies." (Doc. 27 at 1–2).

8

A.M.'s "latest" diagnoses, the Plaintiff attaches assessments from October 2023 which were prepared by A.M.'s teachers. *Id.;* (Doc. 27-4). These arguments fail.

To begin, the Plaintiff cannot prevail by citing A.M.'s alleged diagnoses, as such assessments do not satisfy a listing. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (citations omitted). Instead, there must be "corroborative medical evidence [in the record that is] supported by clinical and laboratory findings." *Id.* (citations omitted); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) ("To meet a [l]isting, a claimant must have a diagnosis included in the [l]istings *and* must provide medical reports documenting that the conditions meet the specific criteria of the [l]istings and the duration requirement.") (emphasis added) (internal quotations and citation omitted); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon [an] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality.").

This standard likewise applies to a determination of whether a minor's conditions "functionally equal" a listing. *See Neal o/b/o A.T. v. Astrue*, 2011 WL 4459177, at *10 (M.D. Fla. Sept. 26, 2011) ("[A] diagnosis alone does not establish that the condition resulted in 'marked' limitations or an 'extreme' limitation in any of the six functional domains.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). And as the evidence recited in the ALJ's decision demonstrates on this score, the ALJ properly bolstered her determination that A.M.'s impairments or combination of impairments did not functionally equal a listed impairment. The information the ALJ

9

relied upon in this regard included treatment notes, pulmonology test results, a consultative examination, and the opinions of the state agency consultants. (R. 22–25).

The Plaintiff's claim that the ALJ neglected to address the "now life threatening" yet unspecified "mental diagnoses" ascribed to A.M is similarly unavailing. (Doc. 27 at 5). In her decision, the ALJ analyzed materials referencing A.M.'s reports that she "sometimes" suffered from a "depressed mood;" the fact that A.M. sought treatment for depression and anxiety; and A.M.'s diagnosis of oppositional defiant disorder. (R. 23–24). These records additionally include references to A.M.'s expressed feelings of hopelessness and periods of sadness, as well as reports that she suffered from post-traumatic stress disorder. *Id.* (citing Exh. C9F, C13F). In sum, the ALJ's decision broadly reflects that she appropriately took into account all the record evidence in reaching her disability finding. (R. 22–25).

As for the October 2023 teacher assessments, the Court cannot discern a basis for returning this matter to the Commissioner based on these items. When reviewing final agency decisions on Social Security benefits, sentence six of 42 U.S.C. § 405(g) "provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time to the district court." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). That provision states:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause

>for the failure to incorporate such evidence into the record in a prior proceeding. . . .

42 U.S.C. § 405(g).

To establish a basis for a sentence six remand, a plaintiff must demonstrate that (1) there is new, noncumulative evidence; (2) the new evidence is "material"—that is, the evidence is relevant and probative such that a reasonable possibility exists that it would change the administrative result; and (3) good cause exists for the failure to submit the evidence at the administrative level. *Hunter v. Soc. Sec. Admin.*, 808 F.3d 818, 821 (11th Cir. 2015) (citation omitted).

In this case, the Plaintiff fails to satisfy her burden of showing a proper ground for a sentence six remand. The teacher evaluations she cites post-date the ALJ's decision and—absent argument from the Plaintiff to the contrary—appear only to pertain to A.M.'s condition at the time of the post-decision assessments. (Doc. 27-4). Notably, the Plaintiff does not assert that these records relate back to the time frame before the ALJ's decision or explain why the records would alter the ALJ's disability determination. As such, even assuming she can meet the other requirements for a section six remand, the Plaintiff does not demonstrate that the records here are material.

Finally, to the extent the Plaintiff invites the Court to engage in a de novo review of the evidence, the Court declines to do so, as it is not its role on appeal to re-weigh the information before it. *Carter*, 726 F. App'x at 739 (confirming that a reviewing court "may not decide the facts anew" or "re-weigh the evidence"). Rather, the

11

Court's obligation is confined to evaluating whether the ALJ predicated her decision on substantial evidence and applied the correct legal standards. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The Court finds that the ALJ did so here.

B.

The Plaintiff's second challenge—as referenced previously—revolves around her further objections to the SSA's handling of both this case and her prior claims filed on behalf of A.M. (Doc. 27). By way of example, again construing the Plaintiff's memorandum liberally, *Tannenbaum*, 148 F.3d at 1263, it seems she asserts that the claims process was "prolonged" and that a case manager failed at some point to update her contact information or her medical records. (Doc. 27 at 3). The Plaintiff also alludes to A.M.'s need for a medical bed and summarily cites Florida Statute § 413.08, which governs the rights and responsibilities of an individual with a disability. *Id.* at 5.

While the Court understands the Plaintiff's longstanding concern for her daughter's wellbeing, the matter before the Court is limited to the SSA's adjudication of the Plaintiff's current SSI application. As a result, any objections the Plaintiff may have regarding the resolution of prior claims is outside the scope of this appeal. *See* 42 U.S.C. § 405(g) (explaining that an individual may obtain judicial review of a final decision of the Commissioner by commencing a civil action within sixty days). As to the instant application, even applying a generous gloss to the Plaintiff's contentions,

she has not raised any grounds in her second challenge which establish that the Court should overturn the ALJ's decision.

IV.

Based upon the foregoing, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Commissioner's favor and to close the case.

SO ORDERED in Tampa, Florida, this 20th day of March 2024.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record
Pro se Plaintiff